UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOUND PARTNERS OFFSHORE FUND, LP, et al.

Plaintiffs,

v.

VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.

Defendants.

No. 3:18-cv-08705 (MAS) (LHG)

**ORAL ARGUMENT REQUESTED**

**Motion Day: August 6, 2018**

**PRICEWATERHOUSECOOPERS LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE COMPLAINT**

Dated: July 30, 2018

KING & SPALDING LLP

James J. Capra, Jr. (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

CHIESA SHAHINIAN & GIANTOMASI PC

A. Ross Pearlson
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

*Attorneys for Defendant PricewaterhouseCoopers LLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT....................1

ARGUMENT....................2

I. All the RICO claims fail because Plaintiffs do not plausibly allege particularized facts showing PwC's knowing and purposeful participation in a criminal enterprise. ....................2

II. All the RICO claims should also be dismissed because Plaintiffs fail to plead other essential elements of the claims....................7

III. SLUSA precludes Plaintiffs' New Jersey RICO claims. ....................10

IV. The Court should dismiss the Section 11 claim to the extent Plaintiffs fail to allege purchases traceable to the March 2015 stock offering....................10

CONCLUSION....................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 5, 6

*Auto. Fin. Corp. v. DZ Motors, LLC*,
2017 WL 3176275 (D.N.J. July 26, 2017)....................2

*Cafaro v. HMC Int'l, LLC*,
2009 WL 1622825 (D.N.J. June 10, 2009)....................9

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
102 F. Supp. 2d 237 (D.N.J. 2000)....................6

*Fagan v. Fischer*,
2016 WL 347318 (D.N.J. Jan. 1, 2016)....................8

*Falla v. City of Passaic*,
146 F.3d 149 (3d Cir. 1998)....................9

*Ford Motor Co. v. Edgewood Props., Inc.*,
2012 WL 4172133 (D.N.J. Aug. 31, 2012)....................5

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)....................6

*In re Amarin Corp. PLC Sec. Litig.*,
689 F. App'x 124 (3d Cir. 2017)....................4

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2017 WL 1658822 (D.N.J. Apr. 28, 2017)....................6

*Klein v. Autek Corp.*,
147 F. App'x 270 (3d Cir. 2005)....................6

*Mayo, Lynch & Assocs. v. Pollack*,
799 A.2d 12 (N.J. App. Div. 2002)....................4–5, 8

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
487 F. App'x 636 (2d Cir. 2012)....................8–9

*O'Brien v. Price Waterhouse*,
740 F. Supp. 276 (S.D.N.Y. 1990)....................3, 4

*Ricale Assocs., LLC v. McGregor*,
2015 WL 5781063 (D.N.J. Sept. 30, 2015) ....................7

*Rothberg v. Marger*,
2013 WL 1314699 (D.N.J. Mar. 28, 2013) ....................5

*Shulton, Inc. v. Optel Corp.*,
1986 WL 15617 (D.N.J. Sept. 29, 1986) ....................9

*Silverstein v. Percudani*,
422 F. Supp. 2d 468 (M.D. Pa. 2006) ....................2

*State v. Ball*,
661 A.2d 251 (N.J. 1995) ....................7

*Szelc v. Stanger*,
2011 WL 1467187 (D.N.J. Apr. 18, 2011) ....................5

*Travelers Indem. Co. v. Cephalon, Inc.*,
620 F. App'x 82 (3d Cir. 2015) ....................6

*United States v. Pungitore*,
910 F.2d 1084 (3d Cir. 1990) ....................9

**Statutes**

N.J. Stat. Ann. 2C:41-2 ....................7

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................2, 5

Fed. R. Civ. P. 9(b) ....................2, 5, 6

*Restatement (Second) of Torts* § 876(b) ....................9

Defendant PricewaterhouseCoopers LLP ("PwC") submits this reply memorandum in support of its motion to dismiss all RICO claims with prejudice and in their entirety (Counts IX, X, XI), and to dismiss in part the claim under Section 11 of the 1933 Securities Act (Count VI).

**PRELIMINARY STATEMENT**

The Hound Partners Plaintiffs ("Plaintiffs") make allegations concerning PwC that are substantively identical to those asserted in five cases in which motions to dismiss have been fully briefed.[1] As PwC explained (PwC Br. at 1), whatever rulings the Court reaches in those cases should apply to the claims against PwC here. In their Omnibus Opposition ("Omn. Opp."), Plaintiffs do not dispute this point or distinguish their allegations—nor could they. Plaintiffs likewise fail to meet the rigorous pleading standards that apply to fraud-based New Jersey RICO claims, which require both plausible and particularized factual allegations showing PwC's knowing and purposeful participation in a criminal enterprise. Plaintiffs fatally sidestep these important pleading hurdles in their Opposition.

First, Plaintiffs lump PwC together with other defendants, claiming that "Defendants" do not dispute the Section 10(b) securities fraud claims that allegedly "support a New Jersey RICO claim." Omn. Opp. at 2, 3. But Plaintiffs have not brought a Section 10(b) claim against PwC, and they *disclaim* any fraud with respect to their only other claim against PwC under Section 11. Second, Plaintiffs' arguments that PwC "failed in its duties" (*id.* at 29) actually supports PwC's point that Plaintiffs' allegations sound in professional negligence—*not* fraud. Finally, Plaintiffs still offer no plausible explanation for why PwC would participate in a criminal scheme. They emphasize PwC's audit fees, but ignore Third Circuit case law that professional fees are not enough to plead a fraud motive. The Court should dismiss the RICO claims with prejudice.

---

[1] *See Lord Abbett*, 17-cv-6365 (ECF 59-1); *Boeing*, 17-cv-7636 (ECF 50-1); *PERS*, 17-cv-7625 (ECF 48-1); *NYCERS*, 18-cv-00032 (ECF 48-1); *2012 Dynasty UC LLC*, 18-cv-08595 (ECF 33).

# ARGUMENT

## I. All the RICO claims fail because Plaintiffs do not plausibly allege particularized facts showing PwC's knowing and purposeful participation in a criminal enterprise.

Plaintiffs do not dispute that all their New Jersey RICO claims against PwC are premised on a purported "fraudulent scheme" (Omn. Opp. at 10) or that these claims require, among other elements, knowing and purposeful participation in a criminal scheme. PwC Br. at 8–9. Thus, in addition to the obligation to plead *factual* allegations that are *plausible* under Federal Rule 8(a), *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiffs must plead them with *particularity* under Rule 9(b), *see Auto. Fin. Corp. v. DZ Motors, LLC*, 2017 WL 3176275, at *5 (D.N.J. July 26, 2017) (Shipp, J.) (applying Rule 9(b) to "fraud-based" RICO and RICO conspiracy claims). Yet, as in their pleading (Compl. ¶ 554), in their brief Plaintiffs resort to collective assertions regarding all defendants. For example, Plaintiff assert that "Defendants cannot and do not dispute the substance of the fraud." Omn. Opp. at 2. But PwC does dispute the substance of any accusation that it participated in a fraud. And, in fact, Plaintiffs have not brought a Section 10(b) securities fraud claim against PwC even though the purported RICO scheme is "premised on 'fraud in the offering, sale or purchase of securities.'" Omn. Opp. at 3.[2] Plaintiffs' brief contains many other similar examples of arguments that conflate PwC with other defendants. *See, e.g.*, Omn. Opp. at 6 ("Defendants represented . . ."); *id.* at 8, 9, 19–20, 27, 35. This approach, like group pleading, does not meet the requirement for pleading RICO claims with particularity. *See Silverstein v. Percudani*, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006) (dismissing federal RICO claims where the complaint "'lumps' together numerous defendants").

---

[2] In addition to not bringing a Section 10(b) securities fraud claim against PwC, Plaintiffs do not even mention PwC in the section of the Complaint on wrongful intent, the "Additional Allegations of Scienter." Compl. ¶¶ 335–95. Plaintiffs also do not assert that their Section 11 claim against PwC (Count VI) is a predicate act for RICO; on the contrary, they "expressly disclaim any allegation of fraud or intentional misconduct" as to this claim. *Id.* ¶ 519.

When Plaintiffs do address PwC specifically (Omn. Opp. at 29–32, 37–38), they fare no better. PwC pointed out that the RICO claims fail because Plaintiffs' allegations amount, at most, to negligence—not to knowing, purposeful participation in a criminal enterprise. PwC Br. at 8–10. For example, Plaintiffs allege in their Complaint that PwC "violated [an] auditor's responsibilities under" professional auditing standards (Compl. ¶ 455) and that PwC did not conduct its audit with "reasonable diligence" (*id.* ¶ 468). In their brief, Plaintiffs affirm this point, arguing that PwC "failed in its duties" or "failed to perform its duty to investigate," such that PwC "knew or should have known" that its audit report on Valeant's 2014 financial statements was wrong. Omn. Opp. at 29, 37. Once again, this is the language of negligence, not intentional misconduct, and it is categorically insufficient to plead RICO claims. *See* PwC Br. at 11, 13; *O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 281, 284 (S.D.N.Y. 1990) (dismissing federal RICO claim when predicate act was "the alleged failure of Price Waterhouse to investigate the factual representations made to it by other defendants," which "at best states a claim for negligence").

At most, Plaintiffs' underlying story is that: (1) PwC knew of Philidor during its 2014 audit and was aware that Valeant had an option to acquire it; (2) PwC should have looked more closely at Valeant's dealings with Philidor because the option agreement was a significant and unusual transaction; (3) in addition to including Philidor's financial results as part of Valeant's consolidated financial statements (which Plaintiffs agree was the right accounting treatment), Valeant should have disclosed Philidor by name in its 2014 10-K filing; and (4) Valeant later restated its financial statements with respect to certain sales to Philidor by less than one percent of total revenue. Omn. Opp. at 29–30, 37–38 (citing Compl. ¶¶ 258–68, 436–39, 455–57).

These allegations, accepted as true for this motion, at most might show only that PwC did not follow professional standards. They come nowhere close to supporting a particularized claim that PwC knowingly and purposely participated in a criminal scheme. Some of these allegations are also made with 20/20 hindsight in the aftermath of the Company's restatement, with the results in hand of a robust independent forensic investigation by an ad hoc committee of independent directors. PwC Br. at 11. Courts regularly dismiss cases based on this type of Monday-morning quarterbacking. *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 132 (3d Cir. 2017) ("fraud by hindsight" has been "long rejected").

Plaintiffs do not address *O'Brien* or the other cases PwC cited for the proposition that negligence allegations are wholly insufficient to plead a RICO claim. Instead, they highlight a handful of cases decided on summary judgment, where evidence of the defendant's misconduct raised a factual question for trial, and claim these cases stand for the proposition that "questions of the defendants' state of mind are best settled at trial." Omn. Opp. at 30. These cases have no application here.

Plaintiffs rely primarily on *Mayo, Lynch & Assocs. v. Pollack*, 799 A.2d 12 (N.J. App. Div. 2002), a case PwC previously distinguished. PwC Br. at 14 n.9. In *Mayo*, a criminal conspiracy had already been established through convictions involving a bid-rigging scheme between a construction firm and municipal officials. 799 A.2d at 15. The losing bidder brought RICO claims against the municipality's attorney, who had certified that the winning bidder's bid-bond complied with statutory requirements even though the price in the bond was blank and a mandated surety consent was missing. *Id.* at 19. The appellate court, reversing summary judgment, held that there was evidence from which a jury could infer the attorney's "knowledge of the bid-rigging scheme and intent to participate in it." *Id.* This evidence included the

attorney's admissions that "he made no effort to ascertain whether the bonds complied with these specifications before he opined that they did" and that a convicted official "informed him that the [performance] bonds were fraudulent." *Id.*

The allegations in this case are not remotely comparable. There is no allegation here that PwC admitted that it was informed of a fraud and nonetheless issued its audit opinion. Nor does *Mayo* stand for the patently false proposition that New Jersey RICO claims must proceed past the pleadings stage because they involve "state of mind." *See* Omn. Opp. at 30. To survive a motion to dismiss, a plaintiff must come forward with well-pleaded allegations that satisfy Federal Rules 8(a) and 9(b). Indeed, given the reputational harm that can result from a RICO claim, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (ellipses and internal quotes omitted); *see also* PwC Br. at 13–14, 16–17 (citing multiple cases where courts have dismissed RICO claims on the pleadings).[3]

Plaintiffs' allegations against PwC are also implausible and conclusory. Plaintiffs do not allege a plausible explanation for why the independent auditor, with no financial interest in Valeant's securities, would participate in an alleged RICO conspiracy led by the Company to inflate the price of its securities. It makes no sense, and Plaintiffs offer no real explanation for why PwC would engage in any such serious wrongdoing. *See* PwC Br. at 9–10; *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The best Plaintiffs can do is to repeat no fewer than seven times that PwC received professional fees (Omn. Opp. at 5, 9,

[3] For their "state of mind" point, Plaintiffs also cite *Szelc v. Stanger*, 2011 WL 1467187, at *9 (D.N.J. Apr. 18, 2011), and *Ford Motor Co. v. Edgewood Props., Inc.*, 2012 WL 4172133, at *31 (D.N.J. Aug. 31, 2012). Omn. Opp. at 30. Like *Mayo*, both involved denials of summary judgment based on the specific evidence in those cases, and neither stands for the proposition that a plaintiff is excused from meeting basic pleading requirements.

11, 29–30, 38), which Plaintiffs exaggerate by aggregating them over an inapplicable three-year period.[4] *Id.* at 30–31 (citing *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 265 (D.N.J. 2000)). PwC previously distinguished *Emcore* (PwC Br. at 14 n.9), where the auditor's alleged RICO conduct was motivated by an impermissible "equity ownership" interest held by certain partners in the client. 102 F. Supp. 2d at 265. Here, there is no allegation of equity ownership, and the Third Circuit has made it crystal clear that the payment of ordinary professional fees does not show motive to commit fraud. *See Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005); *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004). In short, while Plaintiffs pay lip service to the *Iqbal* requirement that they must plead factual allegations to give their claims plausibility (Omn. Opp. at 35), they do not comply with it.

Nor do Plaintiffs meet Rule 9(b)'s heightened pleading requirement, applicable to their fraud-based RICO claims, to plead the circumstances of the fraud with particularity. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d Cir. 2015). There are no particularized allegations of fact to support any claims of serious wrongdoing by PwC; instead Plaintiffs speculate about what PwC knew and did (or did not do), and then add labels to conform to the elements of a RICO claim—for example, that "PwC knowingly facilitated and covered up the fraudulent scheme." Omn. Opp. at 10. The Complaint, however, contains no "factual content" to support this conclusion, and the Court "must disregard" conclusory allegations on this motion. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *9 (D.N.J. Apr. 28, 2017).

---

[4] Plaintiffs refer to $50 million of fees "between 2013 and 2015." Omn. Opp. at 29, 31 (citing Compl. ¶ 466). But the only alleged wrongdoing by PwC relates to its audit report on Valeant's 2014 financial statements (Compl. ¶ 437), and for those services PwC received $12.5 million (*id.* ¶ 466). For the 2013 and 2015 audits, PwC received, respectively, $13.4 million and $20.5 million (*id.*), with the latter, higher amount reflecting additional audit work in connection with Valeant's restatement. Plaintiffs do not allege that these annual amounts were disproportionate or that PwC did not perform the amount of services for which it was paid.

**II. All the RICO claims should also be dismissed because Plaintiffs fail to plead other essential elements of the claims.**

As PwC showed in its opening brief (PwC Br. at 14–17), each of the New Jersey RICO claims should also be dismissed because Plaintiffs do not plead other essential elements of these claims. As before, Plaintiffs often fail to mention, let alone distinguish, the case law cited by PwC, and instead rely on grossly inapposite cases.

First, the primary RICO claim (N.J. Stat. Ann. 2C:41-2(c), Count IX) fails because Plaintiffs do not allege a pattern of racketeering activity by PwC. Plaintiffs plead only one allegedly false statement by PwC—its audit report on Valeant's 2014 financial statements. Compl. ¶ 437. Plaintiffs try to manufacture a pattern by noting that PwC consented to the same audit report being incorporated by reference in the March 2015 offering materials. Omn. Opp. at 31. But this approach would allow virtually any act or incident to be treated as a pattern and is inconsistent with how courts have interpreted the RICO pattern requirement. For example, in *Ricale Assocs., LLC v. McGregor*, 2015 WL 5781063, at *2 (D.N.J. Sept. 30, 2015), certain defendants allegedly (1) induced plaintiff to auction its motorcycles by providing "glowing reviews" of auction houses to the plaintiff and (2) purchased the motorcycles from the auction houses at pre-arranged low prices, while plaintiff was paid nothing. The court held that these pattern allegations failed because the "predicate 'acts' are in fact based on a single act—the purchase of Plaintiff's motorcycles." *Id.* at *2, 6. So too here. Although PwC cited *Ricale* (PwC Br. at 15–16), Plaintiffs do not even mention the case. *See also State v. Ball*, 661 A.2d 251, 264 (N.J. 1995) ("[O]ur statute expressly enjoins use of the RICO statute to cover isolated criminal incidents.").

Second, the RICO conspiracy claim (N.J. Stat. Ann. 2C:41-2(d), Count X) fails because Plaintiffs have not pleaded *facts* showing that PwC was knowingly a party to any unlawful

agreement. Plaintiffs resort to the conclusory assertion that PwC "cover[ed] up the scheme" (Omn. Opp. at 37, citing Compl. ¶¶ 258–75, 436–39, 457), but the referenced allegations show, at best, no more than purported audit negligence, such as that PwC "failed to inquire further into the Philidor relationship, thus failing to conduct its audit in accordance with [professional standards]." Compl. ¶ 262. And Plaintiffs' cases are inapposite. Plaintiffs rely on *Fagan v. Fischer*, 2016 WL 347318 (D.N.J. Jan. 1, 2016). Omn. Opp. at 37–38. In that case, investors in a small Fund pleaded specific e-mails in which the Fund instructed its accountant (who was not its independent auditor) to "use his 'secret sauce recipe,'" meaning, according to the inference plaintiffs drew, "to doctor the financial records of [the Fund] to conceal any acts of fraud" by the Fund's principals. *Id.* at *13. That specifically-pleaded allegation and others were sufficient to infer the accountant's agreement to participate in the RICO enterprise. Here, the allegations are the opposite of coordinated activity and incompatible with PwC's participation in an unlawful agreement: Plaintiffs allege that the improper conduct of certain former Valeant employees resulted in PwC receiving incorrect information about the Company's transactions with Philidor. Compl. ¶ 331. *See also supra* at 4 (distinguishing *Mayo*, which Plaintiffs cite in this context).

Third, the aiding-and-abetting RICO claim (Count XI) fails because routine professional services are insufficient to show that PwC provided "substantial assistance" to the scheme. PwC Br. at 17 (citing, *inter alia*, *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 643 (2d Cir. 2012)). Plaintiffs say that instead of performing routine services, PwC engaged in "active concealment" of the scheme. Omn. Opp. at 38 n.24. But this is a mere conclusory allegation and no different than the allegation in *Meridian* that the auditor aided and abetted wrongdoing by "knowingly and recklessly issu[ing] false and misleading audit opinions." 487 F. App'x at 638. There, the Second Circuit affirmed dismissal on the pleadings because the factual

allegations showed, at most, negligence in the performance of "routine business services," which is *not* "substantial assistance." *Id.* at 643.[5] This Court should treat Plaintiffs' conclusory allegations of "active concealment" no differently. The other case Plaintiffs cite in this context, *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990) (Omn. Opp. at 38), does not address routine business services, but instead involves a mafia extortion racket.[6] That Plaintiffs have gone so far afield as to cite a mafia case, while sidestepping the other professional services cases PwC cited (PwC Br. at 13–14), speaks volumes about the weakness of their claims.

Finally, for the reasons given in Part II.A of Certain Defendants' Reply Memorandum of Law, which PwC incorporates by reference herein, the Court should also dismiss all RICO claims because Plaintiffs fail to plead a RICO enterprise.

---

[5] Under the *Restatement (Second) of Torts* § 876(b), an aiding-and-abetting claim requires the provision of "substantial assistance" to the primary wrongdoer. Plaintiffs appear to invoke a lower standard, citing a 1986 case for the proposition that "intent to facilitate" is enough. *See* Omn. Opp. at 33 (citing *Shulton, Inc. v. Optel Corp.*, 1986 WL 15617, at *13 (D.N.J. Sept. 29, 1986)). *Shulton*, however, predates the Third Circuit's decision in *Falla v. City of Passaic*, 146 F.3d 149, 157–58 (3d Cir. 1998), which points out that New Jersey has adopted the Restatement standard for aiding-and-abetting liability, as well as more recent district court cases applying this standard. *See* PwC Br. at 13–14, 17 (citing cases).

[6] Plaintiffs cite *Pungitore* for the proposition that their allegations show that PwC "further[ed] the Enterprise in exchange for lucrative fees." Omn. Opp. at 38. In *Pungitore*, a mafia figure was convicted of RICO charges for aiding and abetting an extortion scheme. The Third Circuit affirmed based on evidence of his "*knowing* receipt of the extorted monies" *and* that he "personally furthered the shakedown operation by performing acts entitling him to remuneration from the shakedown proceeds." *Pungitore*, 910 F.2d at 1132–33 (emphasis added). Needless to say, the receipt of professional fees for performing audit services is not remotely analogous, and there are no well-pleaded, factual allegations that PwC took any action to further a scheme. On the contrary, Plaintiffs claim that PwC "failed to inquire" (Compl. ¶ 262), which is clearly not "'willful and knowing' substantial assistance." *Cafaro v. HMC Int'l, LLC,* 2009 WL 1622825, at *4–5 (D.N.J. June 10, 2009).

**III. SLUSA precludes Plaintiffs' New Jersey RICO claims.**

For the reasons given in Part I of Certain Defendants' Reply Memorandum of Law, which PwC incorporates by reference herein, the Court should dismiss Plaintiffs' New Jersey RICO claims because these state law claims are precluded by SLUSA.

**IV. The Court should dismiss the Section 11 claim to the extent Plaintiffs fail to allege purchases traceable to the March 2015 stock offering.**

For the reasons given in Part III of Certain Defendants' Reply Memorandum of Law, which PwC incorporates by reference herein, the Court should dismiss Plaintiffs' Section 11 claim to the extent Plaintiffs seek damages attributable to the purchase of shares of Valeant common stock over and above the 268,175 shares they allegedly bought in the Stock Offering.

## CONCLUSION

The Court should dismiss the RICO claims against PwC with prejudice and dismiss the Section 11 claim to the extent Plaintiffs' purchases are not traceable to the March 2015 stock offering.

Dated: July 30, 2018

CHIESA SHAHINIAN & GIANTOMASI PC

By: /s/ A. Ross Pearlson
A. Ross Pearlson
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

KING & SPALDING LLP
James J. Capra, Jr. (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant PricewaterhouseCoopers LLP*