**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOUND PARTNERS OFFSHORE FUND, LP, HOUND PARTNERS LONG MASTER, LP, and HOUND PARTNERS CONCENTRATED MASTER, LP,<br><br>                                   Plaintiffs,<br><br>          v.<br><br>VALEAN PHARMACEUTICALS INTERNATIONAL, INC., J. MICHAEL PEARSON, HOWARD B. SCHILLER, ROBERT L. ROSIELLO, DEBORAH JORN, ARI S. KELLEN, TANYA CARRO, ROBERT A. INGRAM, RONALD H. FARMER, COLLEEN GOGGINS, THEO MELAS-KYRIAZI, ANDERS LÖNNER, ROBERT N. POWER, NORMA PROVENCIO, KATHARINE B. STEVENSON, PRICEWATERHOUSECOOPERS LLP, DEUTSCHE BANK SECURITIES INC., HSBC SECURITIES (USA) INC., MUFG SECURITIES AMERICAS INC. f/k/a MITSUBISHI UFJ SECURITIES (USA) INC., DNB MARKETS INC., BARCLAYS CAPITAL INC., MORGAN STANLEY & CO. LLC, RBC CAPITAL MARKETS, LLC, and SUNTRUST ROBINSON HUMPHREY, INC.,<br><br>                                   Defendants. | Civil Action No. 3:18-cv-08705 (MAS) (LHG)<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**Motion Day: August 6, 2018** |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CERTAIN**
**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................2

I.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA .......................2

    A.    This Action Is No Different From Any Other Opt-Out...........................................2

    B.    Plaintiffs' Gamesmanship Does Not Defeat The Application of SLUSA .............3

    C.    There Is No "Prejudice" Exception Under SLUSA.................................................4

II.    PLAINTIFFS' STATE LAW CLAIMS FAIL FOR ADDITIONAL REASONS .............5

    A.    Plaintiffs Fail To Plead A NJ RICO Claim ..........................................................5

        1.    The Opposition Confirms There Is No "Enterprise" ..................................5

        2.    Plaintiffs Do Not Plead An Enterprise With A Discernable
             Organization Or Decision-Making Structure ................................7

    B.    Plaintiffs' Derivative RICO Claims Fail ...............................................................8

    C.    New Jersey Does Not Recognize Negligent Misrepresentation Claims.................9

III.    PLAINTIFFS' SECTIONS 11 AND 15 CLAIMS ARE INADEQUATELY PLED .......11

IV.    PLAINTIFFS' SECTION 18 CLAIM IS TIME-BARRED ...........................................12

    A.    SOX's Longer Statute of Limitations Does Not Apply........................................12

    B.    The Class Action Did Not Toll Plaintiffs' Claims ...............................................13

    C.    Section 18's Three-Year Statute of Repose Bars Plaintiffs' Claims ....................15

CONCLUSION ......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351 (S.D.N.Y. 2010) ........................................................4

*Beaver Cty. Emps.' Ret. Fund* v. *Tile Shop Holdings, Inc.*,
    94 F. Supp. 3d 1035 (D. Minn. 2015) .....................................................12

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) .................................................................................11

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*,
    2016 WL 9413421 (S.D. Fla. June 29, 2016)...........................................14

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) .............................................................................15

*Carmack v. Amaya Inc.*,
    258 F. Supp. 3d 454 (D.N.J. 2017)...........................................................12

*Cast Art Indus., LLC v. KPMG LLP*,
    209 N.J. 208 (N.J. 2012)...........................................................................10

*Cetel v. Kirwan Fin. Grp., Inc.*,
    460 F.3d 494 (3d Cir. 2006) .......................................................................6

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) .............................................................................14

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014) .............................................................................15

*Dekalb County Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016) .....................................................................13

*Devlin v. Transp. Commc'ns Int'l Union*,
    175 F.3d 121 (2d Cir. 1999) .......................................................................4

*Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharmaceuticals International, Inc.*
    2018 WL 406046 (D.N.J. Jan. 18, 2018).....................................................3

*Fagan v. Fischer*,
    2016 WL 347318 (D.N.J. Jan. 28, 2016).....................................................9

*Fimbel v. Fimbel Door Corp.*,
  2014 WL 6992004 (D.N.J. Dec. 10, 2014) ............................................................7

*Ford Motor Co. v. Edgewood Props., Inc.*,
  2009 WL 150951 (D.N.J. Jan. 20, 2009).............................................................8

*Franklin Med. Assocs. v. Newark Pub. Sch.*,
  362 N.J. Super. 494 (App. Div. 2003).................................................................8

*Gabelli v. S.E.C.*,
  568 U.S. 442 (2013) ..............................................................................................15

*Galicki v. New Jersey*,
  2016 WL 4950995 (D.N.J. Sept. 15, 2016) ..........................................................6

*H. Rosenblum, Inc. v. Adler*,
  93 N.J. 324 (1983) ...............................................................................................10

*Hollis-Arrington v. PHH Mortg. Corp.*,
  2005 WL 3077853 (D.N.J. Nov. 5, 2005),
  *aff'd*, 205 F. App'x 48 (3d Cir. 2006) ..................................................................7

*Hubbard v. Corr. Med. Servs.*,
  2008 WL 2945988 (D.N.J. July 30, 2008) ..........................................................14

*In re Able Labs. Sec. Litig.*,
  2008 WL 1967509 (D.N.J. Mar. 24, 2008) ..........................................................12

*In re Ariad Pharm., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016) .........................................................................11, 12

*In re BP p.l.c. Sec. Litig.*,
  109 F. Supp. 3d 946 (S.D. Tex. 2014)...............................................................3, 4

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) .......................................................................11, 12

*In re Cmty. Bank of N. Va.*,
  622 F.3d 275 (3d Cir. 2010) ...............................................................................14

*In re Enron Corp. Sec. Litig.*,
  465 F. Supp. 2d 687 (S.D. Tex. 2006)................................................................12

*In re Enzymotec Sec. Litig.*
  2015 WL 8784065 (D.N.J. Dec. 15, 2015) ..........................................................12

*In re Exxon Mobil Corp. Sec. Litig.*,
  500 F.3d 189 (3d Cir. 2007) ...............................................................................13

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & ERISA Litig.*,
   503 F. Supp. 2d 25 (D.D.C. 2007) ........................................................... 12

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................... 11

*Instituto De Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) ................................................................ 5

*Joaquin v. Lonstein Law Office, P.C.*,
   2017 WL 2784708 (D.N.J. June 27, 2017) ................................................ 6

*Kelley v. Rambus, Inc.*,
   2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ............................................ 12

*Klawonn v. YA Glob. Invs., L.P.*,
   2016 WL 5923435 (D.N.J. May 6, 2016) ..................................... 12, 13, 15

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   842 F. Supp. 2d 587 (S.D.N.Y. 2012) ....................................................... 5

*Mayo, Lynch & Assocs., Inc. v. Pollack*,
   799 A.2d 12 (N.J. App. Div. 2002) ........................................................... 9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ................................................................................... 4

*Prager v. Knight/Trimark Grp., Inc.*,
   124 F. Supp. 2d 229 (D.N.J. 2000) ........................................................... 5

*Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*,
   14 F. Supp. 3d 591 (D.N.J. 2014) ............................................................. 6

*Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*,
   2015 WL 502039 (D.N.J. Feb. 5, 2015) ............................................... 9, 10

*Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*,
   2013 WL 5467093 (D.N.J. Sept. 30, 2013) ............................................... 7

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*,
   2013 WL 1431680 (D.N.J. Apr. 9, 2013) ................................................ 10

*Raie v. Cheminova, Inc.*,
   336 F.3d 1278 (11th Cir. 2003) .............................................................. 13

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d. Cir. 2005) .................................................................... 4

*Shafer v. Army & Air Force Exch. Serv.*,
   376 F.3d 386 (5th Cir. 2004) ........................................................................4

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 Cir. 1992) ..............................................................................10

*Smart-El v. Correctional Med. Servs., Inc.*,
   2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008) ...................................14

*State v. Ball*,
   141 N.J. 142 (1995) .................................................................................5, 8

*State v. Ball*,
   632 A.2d 1222 (N.J. App. Div. 1993) ...........................................................8

*State v. Cagno*,
   211 N.J. 488 (2012) ......................................................................................8

*Steel Partners II, L.P. v. Aronson*,
   2006 WL 1044818 (D.N.J. Apr. 19, 2006) ..................................................13

*Stichting Pensioenfonds ABP v. Merck & Co. Inc.*,
   2012 WL 3235783 (D.N.J. Aug. 1, 2012) .....................................................4

*The Knit With v. Knitting Fever, Inc.*,
   625 F. App'x 27 (3d Cir. 2015) .....................................................................9

*Tumi, Inc. v. Excel Corp.*,
   2005 WL 1828593 (D.N.J. Aug. 1, 2005) .....................................................9

*Weston v. AmeriBank*,
   265 F.3d 366 (6th Cir. 2001) ......................................................................13

*WM High Yield Fund v. O'Hanlon*,
   2005 WL 6788446 (E.D. Pa. May 13, 2005) ...............................................12

*Yang v. Odom*,
   392 F.3d 97 (3d Cir. 2004) ..........................................................................14

*Zarecor v. Morgan Keegan & Co., Inc.*,
   801 F.3d 882 (8th Cir. 2015) ......................................................................13

## Statutes

15 U.S.C. § 78bb ........................................................................................2

15 U.S.C. § 78r .....................................................................................2, 12

N.J. Stat. Ann. § 2C:41–1 ...........................................................................6

**Other Authorities**

Restatement (Third) of Torts § 5 cmt. f............................................................................10

## PRELIMINARY STATEMENT

The Hound Partners Plaintiffs have spent the past several months attempting to disrupt coordination between their action and the twenty-eight other actions pending before this Court. Nevertheless, the Opposition confirms that Plaintiffs' state law claims, and claims under Sections 11 and 15 of the Securities Act and Section 18 of the Exchange Act, should be dismissed:

**State Law Claims**:  Plaintiffs concede that if this action is a "covered class action" under SLUSA, *all* of their state law claims are preempted.  In an effort to obtain special treatment, however, Plaintiffs have tried to graft a non-existent "prejudice" element onto the SLUSA preemption analysis.  There is nothing unfair about applying SLUSA to this case.  To the contrary, awarding Plaintiffs a benefit for forum-shopping would incentivize other would-be plaintiffs to resist common-sense case coordination.[1]

**NJ RICO:**  Plaintiffs urge the Court to disregard controlling precedent requiring Plaintiffs to plead an enterprise separate and apart from the pattern of racketeering activity because those cases involve federal RICO.  But this Circuit has rejected arguments that the New Jersey and federal RICO statutes are materially different on this point.  Plaintiffs also improperly try to use the Opposition to amend their Complaint.  These amendments are unavailing.

**Sections 11 and 15:** Plaintiffs' pursuit of damages under Section 11 for shares they *did not* purchase in the Stock Offering depends entirely on case law that predates *Twombly* and on insufficient allegations of traceability.  As such, these claims cannot stand.

**Section 18:** Plaintiffs concede that their Section 18 claims were not brought "within one year after the discovery of the facts constituting the cause of action and within three years after

---

[1] Plaintiffs recently advised Valeant that they intend to seek to amend their Complaint, but that they would not be able to provide details about the proposed amendment for at least several weeks.  Defendants believe that no amendment will fix the fundamental flaws identified in the motion to dismiss, including that the state law claims are preempted by SLUSA.

such cause of action accrued."  15 U.S.C. § 78r(c).  The Exchange Act's statute of limitations therefore bars those claims.  Plaintiffs cannot rely on either a longer statute of limitations in Sarbanes-Oxley ("SOX") or *American Pipe* tolling.

## ARGUMENT

## I.  PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA

Plaintiffs argue that their efforts to resist coordination of this case with the 28 related actions means that their case is unique and not a "covered class action."  Opp. at 12–19.  This argument has no merit because SLUSA's application does not depend on a party's efforts to avoid it.

### A.  This Action Is No Different From Any Other Opt-Out

Plaintiffs concede that this action involves the same factual and legal theories as the other 27 opt-outs and Class Action.  Plaintiffs also do not dispute that this Court has coordinated the related Valeant actions, including issuing (i) a stay of proceedings until the *Tanner* criminal trial ended and (ii) two discovery protective orders.  All parties in the related actions have submitted a single joint discovery plan, ensuring further coordination.  Because this action is no different from the other opt-outs, this action is "proceed[ing] as a single action" with the Class Action and opt-outs for "any purpose."  *See* 15 U.S.C. § 78bb(f)(5)(B)(ii).

This Court's stay order applied to this action on equal terms as the 28 related actions.  It is irrelevant that the stay order referred to actions "filed in" this District, as Plaintiffs argue.  Opp. at 17.  Plaintiffs do not contend that they were exempt from the stay order following transfer, and the protective orders expressly "apply to any action deemed related to the [Class Action], including currently pending actions and subsequently filed actions."  ECF No. 33-3 ¶ 33.  Nothing there speaks to where "subsequently filed actions" must originally be filed.

To avoid the impact of these orders, Plaintiffs rely on an irrelevant argument that the

Court's orders do not "order[] that all subsequently filed actions be coordinated" with the Class Action and opt-outs. Opp. at 17. But Defendants have never argued that this action is a covered class action because it was formally joined or coordinated with the related actions. Indeed, the Court already expressly held to the contrary in *Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharmaceuticals International, Inc.* 2018 WL 406046, at *5–6 (D.N.J. Jan. 18, 2018) (holding "a group of lawsuits can trigger preemption without any formal joinder or consolidation").

Finally, Plaintiffs' claim that treating this case as a covered class action would be inconsistent with Judge Cote's transfer order makes no sense. Opp. at 17. Judge Cote transferred this action here so that it *could* be coordinated with the related actions already pending here. ECF No. 74 at 14. And she did so knowing that the effect of transfer would be "the expected dismissal in the District of New Jersey of [Plaintiffs'] state law claims." *Id.* at 11.

## B. Plaintiffs' Gamesmanship Does Not Defeat The Application of SLUSA

Plaintiffs suggest that they should be rewarded for refusing to cooperate with case management efforts thus far. *See* Opp. at 13–14. But Plaintiffs' obstructionist tactics do not provide any basis for avoiding SLUSA's application.

This Court has already rejected the argument that a party's resistance to "formal" coordination could preclude SLUSA's application, dismissing it as textually unfounded. *See Discovery Global*, 2018 WL 406046, at *5–6. Nor do Plaintiffs cite any case law holding that "affirmative steps to avoid coordination" (Opp. at 13) defeat SLUSA preemption. Indeed, such an argument was squarely rejected in *In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d 946, 956–57 (S.D. Tex. 2014), where the court held that individual actions were covered class actions despite the plaintiffs' claims that they had "earnestly pursued their actions independently of the other individual actions" and "eschewed any coordination."

Plaintiffs fail to distinguish *Stichting Pensioenfonds ABP v. Merck & Co. Inc.*, 2012 WL 3235783 (D.N.J. Aug. 1, 2012) and *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351 (S.D.N.Y. 2010). Those courts *dismissed* claims pursuant to SLUSA and noted the same "indicia of coordination" that are present here: the multiple actions (1) involved nearly identical complaints; (2) arose out of the same facts; and (3) involved overlapping claims and parties. *Stichting*, 2012 WL 3235783, at *15–16; *Amorosa*, 682 F. Supp. 2d at 375; *In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d at 957 ("whether there is sufficient 'indicia of coordination' appears to be largely independent of whether Plaintiffs' attorneys have chosen to coordinate the actions").

There is no reason to reward Plaintiffs' recalcitrance. Opening the door for Plaintiffs to avoid SLUSA by unilaterally declining to participate in routine case management efforts will ensure duplicative proceedings before this Court and incentivize other parties to similarly frustrate attempts to increase judicial economy.[2]

## C.  There Is No "Prejudice" Exception Under SLUSA

Plaintiffs argue that dismissal of their state law claims would "epitomize prejudice and undermine the interests of justice." Opp. at 18. The Court should decline to rewrite SLUSA to add a prejudice exception. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87–88 (2006) (it is "inappropriate for courts to create additional, implied exceptions" to SLUSA). Where, as here, SLUSA's elements are met, SLUSA *mandates* dismissal. *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299 (3d. Cir. 2005) (where all of the SLUSA elements are satisfied, the state law claims "must be dismissed"); *Prager v. Knight/Trimark Grp., Inc.*, 124

---

[2] The cases Plaintiffs cite (Opp. at 18 n. 6) to argue that efficiencies from coordination "cannot be permitted to prevail at the expense of justice" have no bearing here, as none analyzed SLUSA preemption. *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (involving consolidation motion under Federal Rule of Civil Procedure 42(a)); *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 394 (5th Cir. 2004) (concerning the scope of a special master's authority with respect to a contempt motion).

F. Supp. 2d 229, 231 (D.N.J. 2000) (covered class actions "must [] be dismissed" under

SLUSA).

Plaintiffs' out-of-circuit authorities are inapposite.  In *Liberty Media Corp. v. Vivendi*

*Universal, S.A.*, the court declined to apply SLUSA in light of the defendant's delay in "not

rais[ing] its SLUSA defense for more than four years after" the consolidation order, thereby

threatening to force the plaintiffs to "litigate any statute-of-limitations and tolling issues raised

by re-filing its claims in state court."  842 F. Supp. 2d 587, 593 & n.2 (S.D.N.Y. 2012).  That

circumstance is not present here.  And in *Instituto De Prevision Militar v. Merrill Lynch*, the

court did not address whether "consolidation over the plaintiff's objection that results in

preclusion under SLUSA may amount to an abuse of discretion" because it affirmed *dismissal* of

the plaintiffs' claims pursuant to SLUSA.  546 F.3d 1340, 1347 (11th Cir. 2008).

## II.     PLAINTIFFS' STATE LAW CLAIMS FAIL FOR ADDITIONAL REASONS

### A.     Plaintiffs Fail To Plead A NJ RICO Claim

#### 1.     The Opposition Confirms There Is No "Enterprise"

Plaintiffs do not credibly dispute the Complaint's failure to articulate an "enterprise"

distinct from Defendants' alleged racketeering activity and, instead, seek to rewrite New Jersey's

RICO law by proclaiming that the "enterprise" is properly pled if it is "no more than the sum of

the racketeering acts."  Opp. at 22.  Plaintiffs misapprehend the law because the authorities they

rely upon either predate the New Jersey Supreme Court's decision in *State v. Ball* or apply the

incorrect standard used by the intermediate appellate court in that case.  *See id.*  The *Ball* court

*rejected* the standard applied by the lower appellate court—the same standard urged by Plaintiffs

here.  141 N.J. 142, 160 (1995).  Instead, the *Ball* court held "that under the RICO Act

'enterprise' is an element *separate* from the 'pattern of racketeering activity' and that [plaintiffs]

must prove the existence of *both*."  *Id.* at 161–62 (emphasis added).

5

The Third Circuit has definitively rejected Plaintiffs' argument that courts must interpret NJ RICO more liberally than federal RICO, finding that "[a] close reading of *Ball* suggests . . . that the New Jersey Supreme Court believed the New Jersey RICO statute was and should be consistent with the federal RICO statute."  *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 510 (3d Cir. 2006).  To be clear, where NJ RICO expressly departs from its federal counterpart, it is possible that NJ RICO claims may be interpreted more liberally.  For example, securities fraud is a statutory predicate act under NJ RICO but not federal RICO.  N.J. Stat. Ann. § 2C:41–1(a)(1)(p).  There is no similar difference in statutory language with respect to the "enterprise" element.[3]  Indeed, *Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n* (MTD at 14 n.11), held that *Cetel* confirmed that the meaning of "enterprise" under both NJ RICO and federal RICO are identical.[4]  14 F. Supp. 3d 591, 613 (D.N.J. 2014).  Plaintiffs' authorities (Opp. at 23) similarly confirm that the two elements are separate under federal law and merely observe that evidence for both elements can overlap.

Recognizing their pleading deficiencies, Plaintiffs manufacture distinctions between their enterprise and racketeering allegations that are contradicted by their Complaint.  But "[i]t is

---

[3] None of the cases Plaintiffs cite for the proposition that NJ RICO is broader than its federal counterpart (Opp. at 21–22 & n.7) supports the conflation of the "enterprise" and "racketeering" elements.  Plaintiffs' reliance on *Joaquin v. Lonstein Law Office, P.C.*, 2017 WL 2784708, at *2 (D.N.J. June 27, 2017), is also misplaced.  The parties in *Joaquin* failed to bring *Cetel* to the Court's attention and the plaintiffs specifically identified an enterprise (defendants' contractual association with DirecTV to prevent piracy) distinct from the racketeering activity (extortion).  No. 15-cv-8194, ECF No. 59 at ¶¶ 14, 41–46.  By contrast, Plaintiffs here plead only that the various "enterprise" members coalesced specifically to violate securities laws and for no other reason.  *See, e.g.*, Compl. ¶¶ 413, 553.

[4] Plaintiffs' attempts to distinguish Defendants' authorities are unpersuasive.  *See* Opp. at 24 n.9. For example, Plaintiffs note that the RICO claim in *Galicki v. New Jersey*, 2016 WL 4950995, at *26 (D.N.J. Sept. 15, 2016) involved a "single, short-lived event."  But this was an *independent* basis for dismissal—the *Galicki* "enterprise" was also inadequately pled because, like here, it was co-extensive with the alleged "racketeering activity."  *Id.*

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Fimbel v. Fimbel Door Corp.*, 2014 WL 6992004, at *6 (D.N.J. Dec. 10, 2014) (internal citation omitted).  For example, the Opposition claims the purpose of the enterprise was to enrich its members, which Plaintiffs say is distinct from the alleged racketeering activity. Opp. at 3.  But as alleged in the Complaint, "the purpose" of the enterprise was "the artificial inflation of the value of Valeant stock."  Compl. ¶¶ 413, 553, 555.[5]  Regardless, whether the alleged purpose was to inflate Valeant stock prices, as the Complaint alleges, or to inflate stock prices so as to "enrich" enterprise members, as the Opposition suggests, is of no consequence.[6] At its core, Plaintiffs plead that the enterprise was designed to commit securities fraud and engaged in racketeering activities that are synonyms for securities fraud.  Compl. ¶¶ 413, 553– 57, 560, 564.  This is a fatal deficiency.  *See, e.g.*, *Hollis-Arrington v. PHH Mortg. Corp.*, 2005 WL 3077853, at *8 (D.N.J. Nov. 5, 2005) ("According to Plaintiffs' own allegations, these specific violations are the sole reason for the existence of the Enterprise, thus, Plaintiffs . . . have negated the existence of an enterprise separate and apart from the pattern of activity at issue here."), *aff'd*, 205 F. App'x 48 (3d Cir. 2006).

      2.    <u>Plaintiffs Do Not Plead An Enterprise With A Discernable Organization Or Decision-Making Structure</u>

Plaintiffs also fail to plead the organization or structure required of an enterprise under NJ RICO.  Plaintiffs pluck text from cases citing the intermediate appellate court's decision in *Ball*, which suggests that the members of an enterprise can be "loosely associated," *Franklin*

---

[5] Plaintiffs' claim that they pled an enterprise separate from the *method* of carrying out the enterprise's purpose—through use of mails and wires (Opp. at 24)—has no bearing on whether Plaintiffs properly pled a *purpose* separate and apart from the racketeering acts.

[6] The court in *Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC*, 2013 WL 5467093, at *21 (D.N.J. Sept. 30, 2013) did not consider the question of whether the purpose of the enterprise was separate from the underlying racketeering activity.  *See* Opp. at 24.

*Med. Assocs. v. Newark Pub. Sch.*, 362 N.J. Super. 494, 513–14 (App. Div. 2003) (citing *State v. Ball*, 632 A.2d 1222, 1240 (N.J. App. Div. 1993)), but do not address the New Jersey Supreme Court's more demanding requirements for pleading an organization or structure.[7]  Plaintiffs do not need to plead an organization with "micro-specificity" (Opp. at 3), but they cannot merely list names and acts (*id.* at 25) coupled with bald conclusions that Defendants coordinated to carry out deceptive business activities (*id.*).  They must demonstrate "how the participants associated with each other, whether the participants each performed discrete roles in carrying out the scheme, the level of planning involved, how decisions were made, [or] the coordination involved in implementing decisions . . . ."  *Ball*, 141 N.J. at 162–63.

## B.      Plaintiffs' Derivative RICO Claims Fail

Plaintiffs do not dispute that failing to plead a RICO enterprise dooms their derivative conspiracy and aiding and abetting claims.  MTD at 17.  But even if it did not, Plaintiffs fail to plausibly allege (1) "an agreement to conduct or participate in the conduct of the . . . enterprise" and (2) "an agreement to the commission of at least two predicate acts" as required.  *Ball*, 141 N.J. at 176.  Plaintiffs' cases addressing the dispute over whether a defendant can be liable for agreeing that *others* within the conspiracy commit at least two acts of racketeering (even without that defendant agreeing to commit those acts personally) are irrelevant here, because they have not alleged either type of agreement.  Opp. at 32.  Plaintiffs effectively concede as much, arguing that a conspiracy can be inferred *without* any allegations of an agreement based on allegations of

---

[7] Plaintiffs contend that a RICO enterprise need not feature an "ascertainable" or "definable structure," (Opp. at 26 n.2), but the cases they cite acknowledge the requirement to show organization and planning beyond routine corporate functions.  *State v. Cagno*, 211 N.J. 488, 494–95 (2012) (finding that "La Cosa Nostra" was a well-established criminal enterprise with "a defined structure and organization," hierarchy of authority, and membership criteria); *Ford Motor Co. v. Edgewood Props., Inc.*, 2009 WL 150951, at *11 (D.N.J. Jan. 20, 2009) (sustaining enterprise allegations of active coordination beyond routine corporate interactions).

underlying illegal acts. *Id.* at 33–35. This proposition is (i) illogical because it would collapse the distinction between a RICO conspiracy claim and a primary RICO claim; and (ii) at odds with Third Circuit precedent holding that plaintiffs must plead "*facts* to show that *each* Defendant objectively manifested an agreement to participate . . . in the affairs of a RICO enterprise." *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015).[8]

Moreover, the Opposition fails to salvage the Complaint's inconsistent allegations that (1) the enterprise's alleged racketeering activities began in 2008, but the agreement to facilitate those activities occurred in 2013 and (2) certain alleged conspirators did not join Valeant until years after the supposed conspiratorial agreement occurred. The Opposition also stands mute with respect to Defendants' argument that Gary Tanner could not have conspired with Valeant when he was convicted of *concealing information from Valeant management*. MTD at 5 & n.5.

Plaintiffs' reliance on the principle that a conspiracy may be proven through circumstantial evidence (Opp. at 32–34) overstates their pleadings, which offer only conclusory allegations of parallel conduct. While plaintiffs *may* "plead circumstantial facts supporting the logical inference that the alleged conspirators had a meeting of the minds," *Tumi, Inc. v. Excel Corp.*, 2005 WL 1828593, at *6 (D.N.J. Aug. 1, 2005), Plaintiffs here have not done so.

### C.    New Jersey Does Not Recognize Negligent Misrepresentation Claims

In *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, the Court dismissed a

---

[8] *Mayo, Lynch & Assocs., Inc. v. Pollack* is inapposite because there the existence of a conspiracy had already been conclusively established in a prior proceeding; the only issue before the court was whether a particular defendant had conspired with the convicted enterprise members. 799 A.2d 12, 22–23 (N.J. App. Div. 2002). By contrast, the "conspiracy" Plaintiffs purport to assert here has not been adequately pled, much less proven. *Fagan v. Fischer* is similarly inapposite. *Fagan* involved particularized allegations that the defendant conspired to doctor financial information based on an email with conspirators that contained instructions to conceal the enterprise's conduct. 2016 WL 347318, at *13 (D.N.J. Jan. 28, 2016). Plaintiffs' allegations of conspiracy are devoid of such specificity.

materially identical negligent misrepresentation claim, holding "that the unlimited class of all potential securities buyers is not particularly foreseeable." 2015 WL 502039, at *6 (D.N.J. Feb. 5, 2015). Plaintiffs fail to adequately explain why this decision does not dictate the outcome here. Plaintiffs offer instead a handful of quarter-century old cases, Opp. at 39, all relying on *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 351 (1983), which articulated a broad standard of foreseeability that was superseded by statute in 1995. *See Cast Art Indus., LLC v. KPMG LLP*, 209 N.J. 208, 221 (2012) ("Only a few states adopted [*Rosenblum*'s] expansive foreseeability test, and New Jersey has, through the passage of N.J.S.A. 2A:53A–25 in 1995, since abandoned it.") (internal citations omitted).[9] The sole post-1995 case that Plaintiffs cite, *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co*., is inapposite because defendants' argument for dismissal relied on other grounds. 2013 WL 1431680, at *8–9 (D.N.J. Apr. 9, 2013).

Contrary to Plaintiffs' suggestion, negligent misrepresentation claims are *not* available with respect to securities purchases, even when the parties are in privity. *See Bank of Am.*, 2015 WL 502039, at *5–6; Restatement (Third) of Torts § 5 cmt. f.[10] Nor are Plaintiffs correct that they were in privity with Defendants because Defendants allegedly had "communications with Plaintiffs" and "were aware that Plaintiffs were relying on Defendants' public statements." Opp.

---

[9] Plaintiffs' attempt to cabin the abrogation of *Rosenblum* fails. Opp. at 40 n. 26. *Rosenblum* held that accountants' negligent misrepresentation liability extended to anyone they "should reasonably foresee as recipients from the company of the statements for its proper business purposes." 93 N.J. at 333. Some courts applied this more expansive formulation outside of the accountant liability context. *E.g.*, *Shapiro v. UJB Fin. Corp*., 964 F.2d 272, 289–90 (3d Cir. 1992) ("*Rosenblum* takes an expansive view of the range of permissible plaintiffs in a negligent misrepresentation action."). It was the "expansive view" of liability for negligent misrepresentation—rather than any particular application of it—that the 1995 statute abandoned.

[10] The Restatement expressly clarifies that negligent misrepresentation claims do not apply to statements made to "all possible investors in the stock market" because "[p]otential liability to members of such a large audience would make a speaker's exposure hard to gauge." Restatement (Third) of Torts § 5 cmt. f.

at 40.  Plaintiffs do not identify any alleged misstatement made to Plaintiffs that was not made to the public at large.  *See id.*[11]

## III.    PLAINTIFFS' SECTIONS 11 AND 15 CLAIMS ARE INADEQUATELY PLED

Plaintiffs acknowledge that they are seeking Section 11 damages attributable to the purchase of Valeant common stock over and above the 268,175 shares that they allegedly bought in the Stock Offering, based solely upon the threadbare allegation that those unidentified additional shares were purportedly "traceable to the Stock Offering."  Opp. at 41–42.  That conclusory statement does not satisfy *Twombly*'s requirement that a complaint "must include 'enough facts to state a claim to relief that is plausible on its face,'" especially where, as here, Valeant had hundreds of millions of shares of common stock outstanding at the time of the offering.  *See In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107–08 (9th Cir. 2013) ("When a company has issued shares in multiple offerings under more than one registration statement . . . a greater level of factual specificity will be needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering.").

Plaintiffs' reliance on *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006), is misplaced.  *See* Opp. at 41–42.  *Suprema* was decided prior to *Twombly*, and the *Suprema* plaintiffs made specific factual allegations about their stock purchases that these Plaintiffs do not.  MTD at 23 n.15.  This "is significant" because "*Twombly* and *Iqbal* . . . heightened general pleading standards," such that "Plaintiffs are required to plead more than legal conclusions supporting their 'traceability' claim."  *Beaver Cty. Emps.' Ret. Fund* v. *Tile*

---

[11] Plaintiffs do not allege that Pearson's statement that he was "as confident as [he's] ever been in the business," (Compl. ¶ 514), was inaccurate or a statement Plaintiffs relied upon.

*Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1057 (D. Minn. 2015) (distinguishing *Suprema*); *see also Ariad*, 842 F.3d at 756 (rejecting bare traceability allegations post-*Twombly)*; *In re Century Aluminum*, 729 F.3d at 1108 (same).[12]

## IV.    PLAINTIFFS' SECTION 18 CLAIM IS TIME-BARRED

Plaintiffs do not dispute that their Section 18 claims are untimely under the statute's requirement that claims be brought "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued."  15 U.S.C. § 78r(c).  Their arguments that the limitations period is longer or should be tolled are meritless.

### A.    SOX's Longer Statute of Limitations Does Not Apply

Plaintiffs' argument that SOX extended Section 18's statute of limitations, (Opp. at 42–43), has been rejected by every court in this Circuit to consider the question.  *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *23 (D.N.J. Mar. 24, 2008) ("[T]he SOX statute of limitations is inapplicable to claims under § 18 of the Exchange Act."); *WM High Yield Fund v. O'Hanlon*, 2005 WL 6788446, at *12 (E.D. Pa. May 13, 2005) (same); *see also Klawonn v. YA Glob. Invs., L.P.*, 2016 WL 5923435, at *7 (D.N.J. May 6, 2016) ("Section 18 [claims] must be brought within one year after discovery of the facts underlying the violation, and in any event within three years after the violation.").[13]

---

[12] Plaintiffs cite two District of New Jersey cases that upheld traceability allegations.  Opp. at 41–42.  Both, however, relied on the Third Circuit's pre-*Twombly* decision in *Suprema*.  *See In re: Enzymotec Sec. Litig.,* 2015 WL 8784065, at *21 (D.N.J. Dec. 15, 2015); *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 469 (D.N.J. 2017).

[13] Outside this Circuit, the weight of authority also rejects application of SOX's statute of limitations to Section 18 claims.  *E.g.*, *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *9 (N.D. Cal. Dec. 9, 2008) ("A large majority of courts have held that the [SOX] statute of limitations . . . did not extend the limitations period under § 18."), *aff'd,* 384 F. App'x 570 (9th Cir. 2010); *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 25, 34 (D.D.C. 2007) (same); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687, 711 (S.D. Tex. 2006) (same).

Plaintiffs ask the Court to disregard this Circuit's unanimous precedent in favor an out-of-circuit, outlier case, *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016). *See* Opp. at 42–43. *Dekalb* is irreconcilable with Third Circuit precedent, including *In re Exxon Mobil Corp. Sec. Litig.*, where the Third Circuit held that the longer SOX statute of limitations period does not apply to violations of Section 14(a) of the Exchange Act because, unlike with Section 10(b), "scienter is not a necessary element in alleging a section 14(a) claim." 500 F.3d 189, 196 (3d Cir. 2007) (internal quotation omitted). Moreover, *Klawonn* was decided nearly two months *after Dekalb* and analyzed the applicability of SOX to claims under the Securities Act that, like Section 18 claims, do not require a showing of scienter. 2016 WL 5923435, at *7–9. Additionally, *Dekalb* was predicated on a finding that the Section 18 claim was fraud-based, 817 F.3d at 407, but Plaintiffs here expressly "disclaim any allegation of fraud" in connection with their Section 18 claim, Compl. ¶ 510. The only in-Circuit case Plaintiffs cite, *Steel Partners II, L.P. v. Aronson*, concerned a claim under Section 13(d) of the Exchange Act and is expressly limited to that section. 2006 WL 1044818, at *4 (D.N.J. Apr. 19, 2006).

### B.    The Class Action Did Not Toll Plaintiffs' Claims

Plaintiffs argue the filing of the Class Action tolled Plaintiffs' claims even though the Class complaint did not assert Section 18 claims. *See* Opp. at 44–45. The weight of authority Defendants cited in their opening brief expressly rejects this overbroad reading of *American Pipe* tolling. *See Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 888 (8th Cir. 2015) ("*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action."); MTD at 25–26.[14] Moreover, Plaintiffs ignore *Yang*

---

[14] *See also Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001) ("Under *American Pipe*, the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint."); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) (same).

*v. Odom*, where the Third Circuit held that claims "inappropriate for class treatment" are not tolled.  392 F.3d 97, 104 (3d Cir. 2004).[15]  As a result, Plaintiffs' reliance on *In re Cmty. Bank of N. Va.* is misplaced.  Opp. at 44.  That case concerned only actions filed following "the denial of class certification *due to deficiencies of the class representative*," 622 F.3d 275, 300 n.17 (3d Cir. 2010) (emphasis added), a situation *Yang* expressly distinguished.  *Yang*, 392 F.3d at 104 (where class certification is denied "because the substantive claims were inappropriate for class treatment," later "substantively identical" actions do not benefit from tolling).[16]

Finally, even if *American Pipe* tolling could apply, Plaintiffs forfeited it by filing an individual action *before* a decision on class certification.  As Plaintiffs concede, (Opp. at 44), the Third Circuit has never expanded *American Pipe* to individual actions filed before a class certification decision.  *See also Smart-El v. Correctional Med. Servs., Inc.*, 2008 U.S. Dist. LEXIS 44376, at *8–9 (D.N.J. June 5, 2008) (finding *American Pipe* tolling inapplicable to individual action filed before class certification decision); *Hubbard v. Corr. Med. Servs.*, 2008 WL 2945988, at *7 (D.N.J. July 30, 2008) (same principle).  As the Supreme Court recently confirmed, *American Pipe* tolling applies "to putative class members who, *after denial of class certification*, 'prefer to bring an individual suit rather than intervene . . . *once the economies of a class action [are] no longer available*.'"  *China Agritech*, 138 S. Ct. at 1804  (internal quotations omitted) (emphasis added).

---

[15] In *China Agritech Inc. v. Resh,* the Supreme Court narrowed *Yang*, holding that *American Pipe* tolling never applies to successive class actions.  138 S. Ct. 1800, 1809 n.5 (2018).

[16] Plaintiffs' out-of-circuit authority is likewise unpersuasive.  Opp. at 44.  *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.* deferred consideration of *American Pipe*'s applicability to Section 18 claims.  2016 WL 9413421, at *10 (S.D. Fla. June 29, 2016).  It did, however, decline to apply SOX's extended statute of limitations to those claims.  *Id.*

### C.    Section 18's Three-Year Statute of Repose Bars Plaintiffs' Claims

Even if *American Pipe* tolling were to apply, claims premised on alleged misstatements made before January 4, 2015 remain untimely under Section 18's three-year statute of repose. Plaintiffs do not respond to the myriad cases Defendants cited demonstrating that, because Section 18 contains a three-year statute of repose that runs from "defendants' last culpable act," *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*"), a Section 18 claim necessarily "accrues" when the relevant SEC filings were made. *See* MTD at 27. Instead, Plaintiffs misconstrue *CalPERS* and *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) to claim that the three-year statute of repose is actually a statute of limitations subject to tolling. *See* Opp. at 45–46. No case supports this position.[17] *CalPERS* and *CTS* did not redefine what a statute of repose is or modify the cases addressing Section 18's statute of repose. *See, e.g.*, *Klawonn*, 2016 WL 5923435, at *5–7 (discussing both *CTS* and Section 18's "dual limitations/repose time limit"). At most, *CalPERS* clarified that statutes with dual one-year/three-year time limits—like Section 18—require a finding that the longer bar is a statute of repose, not subject to tolling. *CalPERS*, 137 S. Ct. at 2049, 2055 (citing *Gabelli v. S.E.C.*, 568 U.S. 442, 453 (2013) (explaining, as here, "statutes applying a discovery rule . . . often couple that rule with an absolute provision for repose")).

### CONCLUSION

Defendants respectfully request that the Court dismiss with prejudice Counts II, IV, V, IX, X, and XI of the Complaint. Counts VI and VIII should be dismissed to the extent they are premised on purchases of Valeant stock not made "in" the Stock Offering.

---

[17] Plaintiffs in related cases have conceded that Section 18's three-year time limitation is a statute of repose. *E.g.* Case No. 16-cv-7212, ECF No. 51, at 16; Case No. 18-cv-0032, ECF No. 81, at 47.

Dated:  July 30, 2018

*s/ Richard Hernandez*            
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 848-8615
Fax: (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Defendants Valeant*
*Pharmaceuticals International, Inc., Robert*
*L. Rosiello, Ari S. Kellen, Ronald H. Farmer,*
*Colleen Goggins, Robert A. Ingram, Anders*
*Lönner, Theo Melas-Kyriazi, Robert N.*
*Power, Norma Provencio and Katharine*
*B. Stevenson*

**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019
Tel:  (212) 373-3305

*Counsel for Defendants Deutsche Bank*
*Securities, Inc., HSBC Securities (USA) Inc.,*
*MUFG Securities Americas Inc., DNB Markets*
*Inc., Barclays Capital Inc., Morgan Stanley &*
*Co. LLC, RBC Capital Markets, LLC, and*
*Suntrust Robinson Humphrey, Inc.*