UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOUND PARTNERS OFFSHORE FUND, LP, HOUND PARTNERS LONG MASTER, LP, and HOUND PARTNERS CONCENTRATED MASTER, LP, <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br> Defendants. | Civil Action No. 18-8705 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on six partial motions to dismiss filed in the above matter.[1] Plaintiffs[2] opposed (ECF No. 129) and Defendants, except Pearson, replied (ECF Nos.

---

[1] The motions currently pending before the Court are:
  1. Partial Motion To Dismiss by Valeant Pharmaceuticals International, Inc. ("Valeant"), Robert L. Rosiello ("Rosiello"), Ari S. Kellen ("Kellen"), Robert Ingram, Ronald Farmer, Colleen Goggins, Theo Melas-Kyriazi, Anders Lönner, Robert Power, Norma Provencio, Katharine B. Stevenson, Deutsche Bank Securities Inc. ("Deutsche Bank"), HSBC Securities (USA) Inc. ("HSBC"), MUFG Securities Americas Inc. ("MUFG"), DNB Markets Inc. ("DNB"), Barclays Capital Inc. ("Barclays"), Morgan Stanley & Co. LLC ("Morgan Stanley"), RBC Capital Markets, LLC ("RBC"), and SunTrust Robinson Humphrey, Inc. ("SunTrust") (Deutsche Bank, HSBC, MUFG, DNB, Barclays, Morgan Stanley and SunTrust, collectively, "Underwriter Defendants") (ECF No. 103).
  2. Partial Motion to Dismiss by PricewaterhouseCoopers LLP ("PricewaterhouseCoopers" or "PwC") (ECF No. 101).
  3. Partial Motion to Dismiss by Howard B. Schiller ("Schiller") (ECF No. 102).
  4. Partial Motion to Dismiss by Tanya Carro ("Carro") (ECF No. 104).
  5. Partial Motion to Dismiss by J. Michael Pearson ("Pearson") (ECF No. 105).
  6. Partial Motion to Dismiss by Deborah Jorn ("Jorn") (ECF No. 106).

[2] Plaintiffs are Hound Partners Offshore Fund, LP, Hound Partners Long Master, LP, and Hound Partners Concentrated Master, LP (collectively, "Hound Partners").

141, 142, 143, 144, and 145). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Underwriter Defendants' Motion to Dismiss Count VIII is granted, PwC's Motion to Dismiss is granted, and all other motions are denied.

I. **Background**

This case and the underlying claims arise out of the same facts and circumstances as the class action currently pending before the Court under docket number 15-7658 ("Class Action"). The Court assumes the parties' familiarity with the underlying facts and recites the facts only to the extent necessary to decide the instant motions.

Plaintiffs allege that Valeant and certain executives, namely, Pearson,[3] Schiller,[4] Rosiello,[5] Jorn,[6] Carro,[7] and Kellen,[8] (collectively, "Management Defendants"), eight members of Valeant's Board of Directors[9] (collectively, "Director Defendants"), Valeant's auditor, PwC, and Valeant's

---

[3] Pearson served as Valeant's CEO and a director of the company from 2008 through May 3, 2016, and Chairman of the Board of Directors from March 2011 to January 2016. (Compl. ¶ 24, ECF No. 1.)

[4] Schiller served as Valeant's CFO and as an Executive Vice President ("EVP") from December 2011 to June 30, 2015. Schiller was also a member of Valeant's Board of Directors from September 2012 until June 2016. (Id. ¶ 25.)

[5] Rosiello served as Valeant's CFO and as an EVP beginning in July 2015 until he stepped down on December 31, 2016. (Id. ¶ 26.)

[6] Jorn was a Valeant EVP and Company Group Chairman from August 2013 through her departure on March 2, 2016. (Id. ¶ 27.)

[7] Carro served as Valeant's Corporate Controller. (Id. ¶ 28.)

[8] Kellen served as a Valeant EVP and Company Group Chairman since January 1, 2014. (Id. ¶ 29.)

[9] The Complaint names the following eight members of Valeant's Board of Directors as Defendants: Norma Provencio, Katherine B. Stevenson, Theo Melas-Kyriazi, Robert A. Ingram, Ronald H. Farmer, Colleen Goggins, Anders Lonner, and Robert N. Power.

bank underwriters, the Underwriter Defendants (as previously defined), participated in a "massive fraud" to deceive investors. Specifically, the Complaint alleges that Valeant and the Management Defendants made "numerous materially misleading and untrue statements" (Compl. ¶ 10, ECF No. 1), hid the truth about certain "unlawful and deceptive practices" (*id.* ¶¶ 7-9), and continued to "minimize[] and obfuscate[]" the truth even as the reality of Valeant's conduct began to emerge (*id.* ¶¶ 11-12). Plaintiffs allege that Defendants' conduct caused the company's shares to plummet, resulting in significant financial losses to Plaintiffs. (Compl. ¶¶ 13-15, ECF No. 1.)

Plaintiffs bring claims for violations of: (I) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder ("Section 10(b)") against Valeant and the Management Defendants; (II) Section 18(a) of the Exchange Act, 15 U.S.C. § 78r ("Section 18"), against Valeant, Pearson, Schiller, and Rosiello; (III) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)"), against Valeant, Pearson, Schiller, and Rosiello; (IV) common law fraud/fraudulent inducement against Valeant and the Management Defendants; (V) negligent misrepresentation against Valeant and the Management Defendants; (VI) Section 11 of the Securities Act, 15 U.S.C. § 77k ("Section 11"), against Valeant, Pearson, Schiller, the Director Defendants, PwC, and the Underwriter Defendants; (VII) Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77(a)(2) ("Section 12") against Valeant, Pearson, Schiller, and the Underwriter Defendants; (VIII) Section 15 of the Securities Act, 15 U.S.C. § 77k ("Section 15"), against Valeant, Pearson, and Schiller; (IX) Racketeering in Violation of N.J.S.A. § 2C:41-1(c) against Valeant, the Management Defendants, and PwC; (X) Racketeering Conspiracy in Violation of N.J.S.A. § 2C:41-2(d) against Valeant, the Management Defendants and PwC; and (XI) aiding and

abetting in violation of N.J.S.A. § 2C:41-2(c) and (d) against Valeant, the Management Defendants, and PwC.[10] (*See* Compl.)

PwC moves to dismiss Count VI in part, and Counts IX, X, and XI in their entirety. (PwC's Moving Br. 1, ECF No. 101.) Valeant, the Management Defendants, the Director Defendants, and the Underwriter Defendants, collectively move to dismiss Counts II, IV, V, IX, X, and XI of the Complaint with prejudice and Counts VI and VIII in part. (Valeant, Management, Director, and Underwriter Defs.' Moving Br. 1, ECF No. 103; Schiller's Moving Br. 2, ECF No. 102; Pearson's Notice of Mot., ECF No. 105.)[11] Individually, Carro and Jorn move to dismiss the same counts, except Counts VI and VIII, which Plaintiffs have not alleged against them. (Carro's Notice of Mot., ECF No. 104; Jorn's Notice of Mot., ECF No. 106.)

## II. Legal Standard

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

---

[10] Counts IX, X, and XI are for alleged violations of New Jersey's Racketeering Statute, or "N.J. RICO."

[11] Valeant, the Management Defendants, the Director Defendants, and the Underwriter Defendants jointly submitted a single moving brief and a single reply brief. (ECF No. 103.) For ease of reference, these documents will be cited as "Valeant's Moving Br." and "Valeant's Reply Br.," respectively. Schiller, Carro, and Jorn submitted their own briefing (ECF Nos. 102, 104, and 106), and Pearson relied on Valeant's briefing (ECF No. 105).

4

Plaintiffs seeking redress for fraud, however, must meet a heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

In addition, claims that allege federal securities violations must satisfy the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA requires that a securities fraud complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *In re Suprema Specialties, Inc.*, 438 F.3d 256, 276 n.8 (3d Cir. 2006)).

### III. Discussion

In *Lord Abbett Investment Trust-Lord Abbett Short Duration Income Fund v. Valeant Pharmaceuticals International, Inc.*, Civ. No 17-6365, 2018 WL 3637514 (D.N.J. July 31, 2018) ("*Lord Abbett*"), a case arising from the same facts and alleged fraud as the instant action, this Court considered motions to dismiss similar claims against Valeant, the Management Defendants, and PwC. Several of the motions here mirror the issues raised in *Lord Abbett*. Where applicable, therefore, the Court will apply the same reasoning. To the extent the motions mirror those in *Lord Abbett*, the Court refers the parties to the detailed Memorandum Opinion it issued in *Lord Abbett*. Where the issues or arguments diverge, however, the Court analyzes the issues in depth here.

A.     The Securities Litigation Uniform Standards Act ("SLUSA")

As an initial matter, the Court must decide whether the Securities Litigation Standards Act ("SLUSA") preempts Plaintiffs' New Jersey common law claims.[12] SLUSA provides, in relevant part, as follows:

> [n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C.A. § 78bb(f)(1)(A)-(B). The Supreme Court has determined that Congress intended SLUSA to be expansive based on "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities . . . ." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006). In addressing the scope of SLUSA, the Supreme Court also found that the statute's preemption provision applies broadly. *Id.* at 74 ("The background, the text, and the purpose of SLUSA's pre-emption provision all support the broader interpretation . . . .").

The parties agree that to determine whether SLUSA preempts Plaintiffs' state law claims, the Court must first rule on whether Plaintiffs are a "covered class" pursuant to the statute. SLUSA provides that a "covered class action," includes, in relevant part, "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii). The parties

---

[12] Hound Partners alleges five state law claims: Count IV (common law fraud/fraudulent inducement), Count V (negligent misrepresentation), Counts IX (Racketeering in Violation of N.J.S.A. § 2C:41-2(c)), Count X (Racketeering Conspiracy in Violation of N.J.S.A. § 2C:41-2(d)), and Count XI (aiding and abetting).

6

agree that the relevant inquiry here is whether the actions "otherwise proceed as a single action for any purpose."

Defendants argue that, "this action is one of twenty-eight[13] opt-out suits before this Court alleging, as the Class Action alleges, that Valeant made material misrepresentations or omissions about Philidor and related matters in violation of the Exchange Act." (Valeant's Moving Br. 8.) Defendants argue that "virtually every allegedly false or misleading statement identified in these cases is at issue in the Class Action." (Id.) Defendants argue that "[t]his action is no different than any of the other opt[-]out cases" and that Judge Cote, in transferring the case to this District, "recognized these coordination efforts and held that transfer was warranted so that it could proceed as 'part of the coordinated group of cases' already pending in this District." (Id. at 9; Valeant's Reply Br. 3, ECF No. 142.)

Plaintiffs vigorously contest that they are proceeding in any way collectively with the other actions so as to make them a "covered class." (Pls.' Opp'n Br. 13-16, ECF No. 129.) Plaintiffs argue that they have undertaken every possible effort to avoid coordination with all other plaintiff groups that have brought actions arising out of the same alleged Valeant fraud scheme, specifically that they: (1) filed in another district; (2) opposed transfer to the district of New Jersey "precisely because of SLUSA"; (3) immediately, after the case was transferred, "requested that the Court avoid any coordination"; (4) "declined to participate in case scheduling discussions and discovery correspondence jointly submitted by the parties to the Other Valeant Actions"; and (5) "opposed all coordination in discovery." (Id. at 13-14.) Plaintiffs argue that "forced coordination under the circumstances here . . . would epitomize prejudice and undermine the interests of justice." (Id. at

---

[13] In the time since the moving brief was filed, the number of opt-out actions pending before the Undersigned has increased to 30.

7

18.) According to Plaintiffs, if the Court were to find SLUSA preemption, "it would establish a rule that effectively bars state law claims brought by individual plaintiffs whenever a similar class action is filed, even in situations (like this one) where the plaintiffs take every conceivable step to avoid the benefits of coordination." (*Id.* at 18-19.) In other words, Plaintiffs argue that the Court would "strip individual plaintiffs of an ability to choose whether to proceed as a 'covered class action' by accepting the benefits of such coordination and forgo their state law claims, or to forgo such benefits . . . in order to preserve their state law claims." (*Id.* at 19.)

In response, Defendants reiterate that this matter is no different than the other opt-out actions and argue that Plaintiffs should not "be rewarded for refusing to cooperate with case management efforts thus far." (Defs.' Reply Br. 3.) Defendants argue that "[o]pening the door for Plaintiffs to avoid SLUSA by unilaterally declining to participate in routine case management efforts will ensure duplicative proceedings before this Court and incentivize other parties to similarly frustrate attempts to increase judicial economy." (*Id.* at 4.)

The Court agrees with Defendants. In keeping with the Supreme Court's interpretation of SLUSA's expansive preemptive reach, the Court finds that, despite Plaintiffs' "affirmative steps to avoid coordination," this is a covered class action for purposes of SLUSA. In fact, the only reason that this case is currently pending before this Court is because Judge Cote transferred it here for the sole reason *that it should be managed with the other actions*. If the other actions were not already pending here, Plaintiffs also would not be before this Court. Upon transfer, therefore, the case joined the other actions pending before the Undersigned in "otherwise proceed[ing] as a single action." Plaintiffs' objections to the transfer do not change this conclusion. Plaintiffs recognized this risk and articulated these concerns to Judge Cote, who nevertheless found that the

8

action was more appropriately managed with the actions already pending in the District of New Jersey.

Each party points out the other party's lack of case law directly addressing whether affirmative steps to avoid coordination will defeat SLUSA preemption. (Defs.' Reply Br. 3-5; Pls.' Opp'n Br. 13-19.) The Court is unaware of any case that holds that a party's objections to coordination make the coordination inapplicable for purposes of SLUSA. While the Court recognizes that Plaintiffs have taken affirmative steps to avoid and object to the coordination, this does not change the reality of the situation. Plaintiffs' action is centered on the same allegations that form the foundation of the Class Action and at least thirty other opt-out actions all consolidated before the Undersigned and the same Magistrate Judge. In fact, the reason Plaintiffs are here is for management with the other actions. The cases are all focused on the same alleged fraudulent scheme and involve the same factual and legal issues. The cases will be subject to overlapping orders from the Court and will undoubtedly encounter the same discovery concerns. The Court, therefore, finds that the cases "otherwise proceed as a single action" to be considered a "covered class action" for purposes of SLUSA, despite Plaintiffs objections' to the coordination.

Importantly, SLUSA preemption is only as to the *procedural* aspect of the claims. "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Dabit*, 547 U.S. at 87. Plaintiffs, therefore, are not losing any substantive right. The "prejudice" to Plaintiffs in allowing Court-imposed coordination to trigger SLUSA, therefore, is minimal. While the Court recognizes Plaintiffs cited a case from the Southern District of New York that found, under the circumstances at issue in that case, re-filing in state court would

cause plaintiffs to suffer further prejudice because they "would be forced to 'litigate any statute-of-limitations and tolling issues'" *Liberty Media Corp. v. Vivendi Universal*, 842 F. Supp. 2d 587, 593 (S.D.N.Y. 2012), the Court here is not persuaded that this potential "prejudice" is enough to overcome the broad preemptory effect of SLUSA. Importantly, in *Liberty Media*, the case was at a very different procedural position. In 2012, the *Liberty Media* court was reviewing an order issued in 2009, on a case filed in 2003. (*Id.*) The prejudice analysis, therefore, was much different.[14]

Policy considerations further support this outcome. To find for Plaintiffs on this issue because they filed in another district, opposed the transfer, and refused to participate in certain conferences, would create a loophole in SLUSA that would incentivize opt-out plaintiffs to object to every act of judicial efficiency that could eventually lead to a finding that the matter is a "covered class action." Not only would this have an unintended effect on the claims of some plaintiffs, it would result in immense judicial inefficiency.[15] The Court, therefore, finds that

---

[14] Further, in *Liberty Media*, the SLUSA issue was not considered by the court at the time that the initial order was entered. *Liberty Media Corp.*, 842 F. Supp. 2d at 590. Here, Judge Cote was fully aware of the SLUSA issue as it was a main point of contention raised by the parties in connection with the motion to transfer.

[15] Similarly, in the same spirit of broad SLUSA preemption, courts have rejected attempts to end-run SLUSA with artful pleading. *See, e.g.*, *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 140 (2d Cir. 2015) (citing *In re Herald*, 730 F.3d 112, 119 (2d Cir. 2013) ("[W]e agree with the district court that, even though the complaints do not style their claims . . . as securities fraud claims, the complaints' allegations nonetheless are precluded by SLUSA. Since SLUSA requires our attention to both the pleadings and the realities underlying the claims, plaintiffs cannot avoid SLUSA merely by consciously omitting references to securities or to the federal securities law." (alteration in original) (internal quotation marks omitted))); *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 555 (6th Cir. 2011) ("In deciding whether SLUSA applies, we review the substance of a complaint's allegations, and claimants cannot avoid its application through artful pleading that removes the covered words . . . but leaves in the covered concepts." (alteration in original) (internal quotation marks omitted)); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (claimant cannot avoid SLUSA through artful pleading that eliminates the covered words but retains the covered concepts); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir.

SLUSA preempts Plaintiffs' state law statutory[16] and common law claims. Defendants' motions to dismiss on these counts, therefore, are granted.

**B.     Section 18 Claim**

Valeant, Pearson, Schiller and Rosiello move to dismiss the Section 18 claim as time-barred. Section 18 of the Exchange Act states that an underlying action may only be brought "within one year after the discovery of the facts constituting the cause of action." 15 U.S.C. § 78r(c). In 2002, Congress enacted the Sarbanes Oxley Act of 2002 ("SOX"), which provides a two-year statute of limitations and five-year statute of repose for private rights of action involving claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . of the Securities Exchange Act of 1934." 28 U.S.C. § 1658(b). Plaintiffs filed their Complaint on January 4, 2018, for purchases of Valeant common stock that occurred between January 4, 2013 and March 14, 2016. (Compl. ¶ 1, ECF No. 1.)

The Valeant Defendants argue that under Section 18, Plaintiffs had one year from the date that the alleged fraud was revealed to file the instant action, but that they filed more than eighteen

---

2005) ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting."). In the same way that courts have not permitted plaintiffs to plead their way around SLUSA preemption, the Court refuses to let Plaintiffs procedurally maneuver around SLUSA preemption by raising objections to acts of judicial efficiency even when Plaintiffs were transferred to this District for purposes of coordinated case management.

[16] Defendants in this action argued that SLUSA preempts the statutory (N.J. RICO) and common law claims. (Valeant's Moving Br. 11.) Plaintiffs' opposition brief did not provide any authority for the proposition that the N.J. RICO claims should be treated differently than the common law claims. (*See* Pls.' Opp'n Br.) The only authority provided by either party specific to the N.J. RICO issue is a case from the Southern District of New York, finding SLUSA preemption appropriate as to all state law claims, including N.J. RICO. (Valeant's Moving Br. 11 (citing *Friedman v. JPMorgan Chase & Co.*, No. 15-CV-5899 (JGK), 2016 WL 2903273, at * 14-15 (S.D.N.Y. May 18, 2016).) The Court, therefore, sees no reason to differentiate between the N.J. RICO claims and the state common law claims on the issue of SLUSA preemption. In fact, the text of SLUSA specifically refers to state statutory claims.

months after that date. (Defs.' Moving Br. 23.) Plaintiffs respond that SOX applies to and increases the limitations period of Section 18 and, therefore, the claims are timely because the Complaint was filed within two years of when a Section 18 violation was discovered. (Pls.' Opp'n Br. 42, ECF No. 129.)

In *Lord Abbett*, this Court considered this issue and adopted the Second Circuit's ruling in *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016). Specifically, the Court found that SOX's expanded limitations provision applies to Section 18 claims. *Lord Abbett Investment Trust*, 2018 WL 3637514, at *8. The Court, therefore, finds that the claims here are timely and Defendants' motion to dismiss the Section 18 claims as time-barred is, accordingly, denied.

### C. Section 11 and Section 15 Claims

PwC, Valeant, Management Defendants, Director Defendants, and Underwriter Defendants all move to dismiss Plaintiffs' Section 11 and 15 claims.[17] Section 11 provides that "a private action for damages may be brought 'by any person acquiring such security' if a registration statement, as of its effective date: (1) 'contained an untrue statement of material fact'; (2) 'omitted to state a material fact required to be stated therein'; or (3) omitted to state a material fact 'necessary to make the statements therein not misleading.'" *In re Suprema Specialties, Inc.*, 438 F.3d 256, 269 (3d Cir. 2006) (quoting 15 U.S.C. § 77k(a)) (internal quotations and citations omitted). The Supreme Court has explained that Section 11 "was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability

---

[17] Sections 11 and 15 of the Securities Act are both based on the same underlying statute, 15 U.S.C. § 77k. Section 15 extends liability to control persons for civil claims under Section 11. Plaintiffs allege that Valeant, Pearson, and Schiller violated Section 15 as "control persons." (Compl. ¶¶ 544-48.)

on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983) (footnotes omitted). The rule, thus, allows for a cause of action against "the issuer of securities, its directors or partners, underwriters, and accountants who prepared or certified the registration statement." *In re Suprema Specialties*, 438 F.3d at 269 (citing *Huddleston*, 459 U.S. at 382 n.13).

Defendants argue for dismissal of the Section 11 and 15 claims "to the extent Plaintiffs seek damages attributable to the purchase of shares of Valeant common stock over and above the 268,175 shares they allegedly bought in the Stock Offering." (Valeant's Moving Br. 21-22; PwC's Reply Br. 10, ECF No. 141.) That is, Defendants allege that Plaintiffs may not bring Section 11 claims for Valeant stock acquired on the secondary market, unless those purchases are traceable to the allegedly false registration statements at issue. (*Id.*) Plaintiffs respond that a specific showing of traceability is not required at the pleading stage. (Pls.' Opp'n Br. 41-42.)

The Third Circuit has held that where plaintiffs assert that they purchased stock pursuant to a registration statement, they have sufficiently plead a cause of action under Section 11. *In re Suprema Specialties, Inc.*, 438 F.3d at 274 n.7 ("We . . . hold that plaintiffs' assertions of purchases 'in' and 'traceable to' the Suprema stock offerings were sufficient at the pleading stage [to maintain a Section 11 claim].") The Complaint alleges that Plaintiffs seek redress for "damages they incurred in connection with purchases of Valeant common stock traceable to the Stock Offering." (Compl. ¶ 520.) The Court, therefore, finds Plaintiffs' Section 11 and 15 claims sufficient to survive a motion to dismiss. Whether Plaintiffs can trace the purchase of their shares to a false or misleading registration statement is a factual inquiry that should be resolved through discovery rather than at this early stage in the proceedings. *In re Suprema Specialties, Inc.*, 438

F.3d at 274 n.7. The Court, therefore, denies Defendants' motion to dismiss the Sections 11 and 15 claims.

## IV. Conclusion

For the reasons set forth above, Valeant, the Management Defendants, the Director Defendants, and the Underwriter Defendants' motions to dismiss are **DENIED** in part and **GRANTED** in part and PwC's Motion to Dismiss is **DENIED** in part and **GRANTED** in part. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: September 14, 2018

14